No. 18,873.

JOHN HAUGHTON, *Appellant*, V. RALPH L. SOULE et al.
(A. HEIDRICK, *Appellee*).

### SYLLABUS BY THE COURT.

PARTNERSHIP—*Note Given by One Partner for Copartner's Interest—Interest Returned to Vendor—Accepted—Note Satisfied.* Where A, as owner of an interest in a certain partnership property, sells such interest to B and accepts the promissory note of B, with a surety, for the purchase price, and where thereafter litigation is instituted which may affect A's interest in the property and B, with knowledge thereof, attempts to surrender the property to A, which A at the time neither accepts nor refuses, but thereafter, with his former partners, joins in a bill of sale of the property to other parties and accepts such proportionate share of such purchase price as his former interest would have entitled him to, and also procures a judgment that B has no interest in the property, *held*, that A will not be heard to say that he has not accepted a return of the property from B or that B or his surety is still indebted to him for the note given for the purchase price.

Appeal from Greenwood district court; GRANVILLE P. AIKMAN, judge. Opinion filed December 12, 1914. Affirmed.

*M. M. Suddock*, of Emporia, for the appellant.

*Howard J. Hodgson, S. F. Wicker*, and *Gordon A. Badger*, all of Eureka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: In May, 1906, the appellant, John Haughton, and A. Heidrick, W. D. Heidrick, Shaw, and Burris discussed the idea of buying a drilling rig and appliances for the purpose of drilling wells for the discovery of oil and gas. Shaw stated that he knew of such a rig and appliances which could be bought for $1,800, and that it would cost $200 to move it to Madison; that he would put in $800 if the other parties would advance the balance. This was agreed to. Shaw

went to Langdon, Kan., and on his return reported that he had contracted to buy a rig and appliances at $1800 and had paid $800 on the purchase price; that the balance was to be paid on or before June 1, and exhibited a written agreement between himself and one Worley, to that effect. The other parties raised $1000, the balance of the purchase price as they understood it, and $200 for moving the rig. Shortly thereafter they formed a partnership called the Madison Drilling Company, and agreed that the interest of Shaw in the partnership should be eight-twentieths, A. Heidrick five-twentieths, Haughton five-twentieths, Burris one-twentieth, and W. D. Heidrick one-twentieth. This was done upon the understanding that each party had paid the proportionate share of the cost of the machine and moving the same as indicated by the fractions, the total cost being $2000.

Thereafter the partnership contracted to drill a well for the Madison Oil & Gas Company, and the carrying out of this contract resulted in a loss to the partnership of $9032.21. Of this loss Shaw paid nothing, but it was paid by the other partners. Soon thereafter Shaw left and took no further part in the business of the drilling company. About this time the other partners discovered that the drilling rig and appliances cost $1000 and no more, and that instead of Shaw paying $800 as he had represented, he had paid nothing, and they had paid the entire purchase price of the rig and appliances.

The other partners, without Shaw, proceeded to make contracts for other wells and drilling the same, and treated Shaw as though he had no interest therein, and they acted on the theory and mutually agreed that they owned the rig and appliances as follows: A. Heidrick five-twelfths, Haughton five-twelfths, Burris one-twelfth, and W. D. Heidrick one-twelfth.

In September, 1907, the defendant Soule bought the interest of Haughton and gave the note for $1000, sued

on, therefor. A. Heidrick signed the note as surety. In April, 1908, Soule paid $200 thereon. At the time Soule bought the interest of Haughton he knew something of the relations of Shaw to the copartnership and demanded and received from Haughton a bill of sale with warranty of title. Soule continued to use the machinery a short time thereafter.

The petition in this case was filed September 4, 1909, and sets forth the promissory note, signed by Soule and Heidrick, dated September 12, 1907, due April 1, 1908, principal $1000, and endorsement of $200 paid April 21, 1908. No service of summons was had in this case upon Soule, and upon the calling of the case for trial the plaintiff dismissed the action as to him.

The defendant Heidrick filed an answer setting up seven defenses and cross-demands, and dismissed two of them. The first defense, in substance, was that the plaintiff did not have title to five-twelfths' interest in the property of the partnership and that Soule discovered that fact and immediately abandoned the property and returned it to the plaintiff; that plaintiff accepted it and has ever since claimed to own and operate it. Second, the bringing of the action in the district court of Lyon county against Shaw to recover the rig, and Shaw's share of loss while operating the well drill on the first well, and the recovery of judgment for $3292.88 and costs, by reason whereof it is alleged no consideration was given by the plaintiff for the note sued on. The remaining defenses were counterclaims against the plaintiff, which were allowed, and there is no controversy over them here.

The reply was a general denial in which it was alleged that the Lyon county suit was brought in part to secure the title of Soule in the property bought of plaintiff. Again, that at all times since the purchase by Soule of the interest in the property as alleged in the petition, Soule has exercised dominion and control over the property, and on June 1, 1909, by his agent, the de-

fendant Heidrick sold such interest in the property of
the partnership to one Chapin and executed a bill of sale
in writing therefor signed by A. Heidrick as agent; that
the sale fell through by reason of the failure of Chapin to
comply with the conditions, and Soule, through A. Heid-
rick as agent, again sold the interest in the rig to W.
F. Cowham and A. B. Bloom, and on January 14, 1910,
executed a written contract witnessing such sale,
which contract was signed by Soule, by A. Heidrick,
agent; that by reason of these facts the defendants
are estopped from saying that Soule returned the
property to the plaintiff. That such bills of sale were
so signed by Heidrick is admitted by him in his evi-
dence, but he says he signed them to satisfy the pur-
chasers. There is no evidence that he had authority
from Soule to do so.

The case was called for trial and a jury was im-
paneled to hear it. A statement of the claims was
made by counsel on each side, whereupon the court, on
its own motion, discharged the jury and appointed Lew
E. Clogston, referee, to report the facts and conclusions
of law. On the hearing before the referee all the files,
evidence and proceedings, including the judgment in
the case of Heidrick et al. against Shaw and Soule,
were introduced in evidence over the objection of the
plaintiff.

The first assignment of error is that the action of
the court in discharging the jury and appointing a
referee to hear the case was erroneous. It is said that
the action of the plaintiff was on a plain promissory
note, of which a copy was set forth, and that the de-
fendant answered setting up seven defenses and coun-
terclaims.

We have no abstract of the statements made by
counsel upon which the court relied, but the first de-
fense justifies the long accounting had before the
referee, in which a very large number of items of debit
and credit are involved. The case was peculiarly one
that should be heard by a referee and not by a jury.

28—93 KAN. ·

The journal entry, after awarding judgment against Shaw for $3292.88 and costs and determining the amount of the receiver's fees, etc., concludes:

"And the court does decree that the partnership heretofore existing between the plaintiffs and the defendant, G. W. Shaw, be dissolved and determined, and does decree and adjudge that the drilling rig is and has been the property of the plaintiffs since all times, free from any claim or lien upon the part of the defendant G. W. Shaw."

It thus appears that Haughton, acting with his copartners, obtained a decree of the court, which was rendered after the sale of the property to Soule, that he was then the owner of the five-twelfths interest which he had sold to Soule. There is abundant evidence, also, that at and since the execution of the bill of sale to Cowham and Bloom he participated with his former partners in conducting the business, and united with them in turning over the $3000 received from Cowham and Bloom to A. Heidrick, who deposited it with the Madison bank and checked it out in paying the indebtedness of Haughton and the others who were decreed to be the owners in the Shaw case, much of which indebtedness was evidenced by promissory notes signed by appellant and other members of the firm and dated in 1908 and 1909, and after Soule had tendered the return of the property; all of such $3000 was so disbursed except $1.40, which sum was divided between the copartners. Nothing whatever was accounted for to Soule, and Haughton, as well as the others interested, acted in accordance with the decree of the Lyon county court; that neither Shaw nor Soule had any interest whatever in the property, but that it belonged entirely to Haughton and those who were his partners before the sale to Soule and who were united with Haughton as plaintiffs in that action.

Under these facts, Haughton can not be heard to say that he never accepted the offer made by Soule to surrender the property to him, and he can not be heard to

say that he accepted the property for which the note in suit was given, and that the makers of the note were still indebted to him for the amount thereof. If the principal on the note, Soule, was by reason of the subsequent action of Haughton relieved from the payment thereof, surely his surety, Heidrick, was also relieved therefrom.

We have not discussed all the questions raised in the case, nor all the assignments of error, but it seems that the question of accepting a return of the property is the controlling question in the case.

The judgment is affirmed.